

1

2    ENTERED
     CLERK, U.S. DISTRICT COURT
3
     AUG 2 3 2004
4
     CENTRAL DISTRICT OF CALIFORNIA
5    BY                        DEPUTY

6

                                    ____ Priority
                                    ____ Send
                                    ____ Clsd
                                    ____ Enter
                                    ____ JS-5/JS-6
                                    ____ JS-2/JS-3

                    FILED
          CLERK, U.S. DISTRICT COURT

              AUG 2 0 2004

          CENTRAL DISTRICT OF CALIFORNIA
          BY                        DEPUTY

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   ELECTRO SOURCE, LLC, a              CASE NO. CV 02-7974 NM (CTx)
12   California limited liability company,

13        Plaintiff,

14
15        v.

16   PELICAN PRODUCTS, INC., a
17   California corporation, BRANDESS-
     KALT-AETNA GROUP, INC., an
18   Illinois corporation,

19        Defendants.                     ORDER DENYING DEFENDANTS'
                                          MOTION TO DESIGNATE CASE
20                                        EXCEPTIONAL, ENTITLING
                                          DEFENDANTS TO AWARD OF
21                                        ATTORNEYS' FEES AND COSTS
     PELICAN PRODUCTS, INC., a
22   California corporation,

23        Counterclaimant,

24
25        v.

26   ELECTRO SOURCE, LLC, a
27   California limited liability company,

28        Counterclaim Defendant.

148

# I. INTRODUCTION

On February 15, 2001, Plaintiff Electro Source, LLC ("Plaintiff") filed suit against Defendant Pelican Products, Inc., alleging that Pelican's use of the "Pelican" word and design marks infringed upon Electro Source's registered marks. See Electro Source, LLC v. Pelican Products, Inc., CV No. 01-1555, Filed 2/15/01 ("Pelican I"). On October 15, 2002, Plaintiff filed the instant lawsuit ("Pelican II"), alleging infringement of its Pelican logo mark, Trademark Registration No. 2,073,287 ("Mallett Registration"), which Plaintiff acquired by assignment on or about August 5, 2002 from registrant Ron Mallett ("Mallett").

On February 10, 2004, Defendants Pelican Products, Inc. and Brandess-Kalt-Aetna Group, Inc. ("Defendants") filed a motion for summary judgment in Pelican II, alleging that the Mallett Registration was invalid and unenforceable because (1) the trademark application was fraudulently procured and renewed by knowingly false declarations, (2) the mark was subsequently abandoned, and (3) the assignment to Plaintiff was an assignment in gross.

By order dated April 7, 2004, the court granted Defendants' motion for summary judgment on the basis that Mallett had abandoned the trademark and accordingly, the assignment was an assignment in gross. On June 3, 2004, a stipulation and order for voluntary dismissal of counterclaims and entry of judgment was filed. Now before the court is Defendants motion for attorney's fees against Plaintiff and its counsel pursuant to 15 U.S.C. § 1117, 28 U.S.C. § 1927, Fed. R. Civ. P. 11, and/or the court's inherent powers.

# II. DISCUSSION

Under Section 35 of the Lanham Act, the court may award reasonable attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). Although "exceptional" is not defined in the Lanham Act, the Ninth Circuit has held that a trademark case is exceptional when it involves "malicious, fraudulent,

1   deliberate, or willful" conduct or the suit is "groundless, unreasonable, vexatious,

2   or pursued in bad faith." <u>Steven W. Boney, Inc. v. Boney Servs., Inc.</u>, 127 F.3d

3   821, 825-26 (9th Cir. 1997) (quoting <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d

4   1400, 1408 (9th Cir. 1993)); <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1156

5   (9th Cir. 2002). Courts have awarded attorneys' fees to a prevailing defendant

6   where, for instance, the plaintiff had no legal basis for bringing suit or sued on an

7   invalid registration for a generic term. <u>See</u> 5 J. Thomas McCarthy, McCarthy on

8   Trademarks and Unfair Competition § 30:101 (4th ed.); <u>see also, e.g.</u>, <u>Cairns v.</u>

9   <u>Franklin Mint Co.</u>, 115 F. Supp. 2d 1185, 1188-89 (C.D. Cal. 2000), <u>affirmed</u> 292

10   F.3d 1139 (9th Cir. 2002).

11      The success of the suit is not the test — the claims must be "groundless,

12   unreasonable, vexatious or pursued in bad faith" to be exceptional. <u>See</u>

13   <u>Blockbuster Videos, Inc. v. City of Tempe</u>, 141 F.3d 1295, 1300 (9th Cir. 1998);

14   <u>Cairns</u>, 292 F.3d at 1188. The Ninth Circuit has affirmed the denial of attorneys'

15   fees to a prevailing defendant where the action was not frivolous and "raised

16   debatable issues of law and fact." <u>Boney</u>, 127 F.3d at 827. The prevailing party

17   bears the burden of demonstrating the exceptional nature of a case by clear and

18   convincing evidence. <u>Leatherman Tool Group Inc. v. Cooper Industries Inc.</u>, 47

19   U.S.P.Q. 2d 1049, 1050 (D. Or. 1998) (citing <u>Seven-Up Co. v. Coca-Cola Co.</u>, 86

20   F.3d 1379, 1390 (5th Cir. 1996)).

21

22          ***A. Plaintiff's pre-filing investigation***

23      Defendants argue that they are entitled to an award of attorneys' fees under

24   15 U.S.C. § 1117 because Plaintiff filed this lawsuit without any pre-filing

25   investigation and thus had no basis for filing suit. Had Plaintiff's counsel

26   conducted a pre-filing investigation, Defendants contend, Plaintiff would have

27   known that the Mallett Registration was invalid because the trademark had been

28   abandoned four years earlier.

1    While this conclusion is a tenable one, it is not compelled by clear and

2    convincing evidence. Although neither Plaintiff's representatives nor its counsel

3    reviewed any documentation from Mallett before filing suit, or before the

4    trademark was assigned and a renewal declaration filed, Plaintiff's counsel did

5    interview Mallett about his trademark and its use in commerce. Counsel inquired

6    about the products Mallett was selling under the mark, including the approximate

7    number of products sold, whether he took them to trade shows, and the continuity

8    of his sales and promotional activities. Mallett Summ. J. Decl. ¶ 19. Plaintiff's

9    counsel also inquired about the first use of the mark and about any goods that

10   Mallett had previously sold but no longer sold or marketed. Id. Additionally,

11   Plaintiff's counsel solicited information regarding Mallett's customers, the stores

12   he sold to, what kind of samples he had, and the kind of business records he

13   possessed. Russ Depo., pp. 22-25 (App. to Finch Decl., Exh. E).

14       Defendants further argue that Plaintiff's duty to investigate was heightened

15   by "glaring red flags" Plaintiff chose to ignore, viz., Mallett sold the mark for only

16   $15,000 and Plaintiff knew that since 1999, Mallett was employed full-time by

17   KoKo Island selling other goods.[1] These purported "red flags" add little to

18

19       [1] Defendants also argue Plaintiff had a heightened duty to investigate in light of
20   Mallett's lack of sophistication in matters of trademark law and because Plaintiff filed a
     Combined Declaration of Use and Incontestability Under §§ 8 & 15 under the penalty of
21   perjury. In contrast to S. Bravo Systems, Inc. v. Containment Technologies Corp., 96
22   F.3d 1372, 1375 (Fed. Cir. 1996), where attorneys relied on their client's lay opinion as
     to patent infringement, Plaintiff's counsel here did not ask Mallett legal questions.
23   Rather, counsel asked Mallett factual questions in order to draw legal conclusions.
24       Additionally, the fact that Plaintiff submitted a Combined Declaration under
25   penalty of perjury is not as significant as Defendants suggest, as Plaintiff based the
     assertions contained therein on information provided by Mallett. In ruling on
26   Defendants' motion for summary judgment, the court declined to find that statements
27   made in the Combined Declaration were fraudulent as a matter of law. The court
     ultimately found the statements of "continuous use" literally untrue because the mark had
28   been abandoned.

1    Defendants' case.  In addition to $15,000, Mallett received a license-back

2    agreement to sell Pelican luggage items royalty free and gained the advantage of

3    potentially having his mark advertised nationally.  Finally, the fact that Mallett

4    was employed full-time for another company selling other goods did not, standing

5    alone, necessitate a finding of abandonment.[2]  This factor was relevant evidence of

6    an intent not to resume use of the mark and, along with many others factors,

7    warranted a finding of abandonment.

8          Plaintiff cites Eltech Systems Corp. v. PPG Industries, Inc., 903 F.2d 805

9    (Fed. Cir. 1990) for the proposition that 15 U.S.C. § 1117 imposes a duty to

10   conduct an investigation prior to filing a complaint.  There, the court considered

11   whether a case was exceptional under the patent statute, 35 U.S.C. § 285, not the

12   Lanham Act.  The court held that the filing and maintaining of an infringement

13   suit which the patentee knows, or on reasonable investigation should know, is

14   baseless constitutes grounds for declaring a case exceptional under Section 285.

15   The court affirmed the district court's holding that the suit was maintained in bad

16   faith and was "manifestly unreasonable in assessing infringement" because of

17   "studied ignorance," viz., even the plaintiff's own tests did not establish

18   infringement.  903 F.2d at 810-11.  Here, Plaintiff engaged in *some* investigation

19   before filing suit, and the basis for the suit has not been shown to have been

20   utterly baseless.  Though Plaintiff and counsel could and should have done more,

21   the court cannot conclude that Plaintiff's counsel's failure to review Mallett's

22   documentation rises to the level of sanctionable conduct rendering this case

23

24

25   ────────────────

26         [2] In fact, the court noted that it was unclear whether Mallett sold Pelican-branded
     goods regardless of the terms of his non-compete agreement with KoKo Island or that
27   Mallett's Pelican sales necessarily violated the agreement.  See Order dated April 7, 2004,
     p. 26 n. 26.
28

1  exceptional.[3]

2       Finally, the court's conclusion that "no reasonable juror could find that

3  Mallett made bona fide use of the mark in the ordinary course of trade and

4  intended to resume bona fide use of the mark in interstate commerce after 1998"

5  does not, by itself, make the case exceptional.  <u>See</u> Order dated April 7, 2004, p.

6  32.  If it did, every litigant who prevailed on summary judgment would be entitled

7  to attorneys' fees.  Section 1117 clearly requires something more.

8

9  ### B. "Improper Purpose"

10       Defendants also argue that this case is exceptional because it was initiated

11  for an improper purpose.  They argue that Plaintiff had "ulterior motives" in

12  securing a tactical benefit in <u>Pelican I</u>, thereby delaying <u>Pelican I</u> and continuing

13  to profit from its allegedly infringing activities.  Defs.' Mot., p. 16.  In support,

14  Defendants note the timing of the assignment and the fact that Plaintiff has yet to

15  use Mallett's mark since the assignment.[4]

16       The fact that Plaintiff acquired Mallett's mark during the pendency of

17  <u>Pelican I</u> does not necessarily show an improper purpose.  <u>See generally</u>, <u>Glow</u>

18  <u>Industries v. Lopez</u>, 273 F. Supp. 2d 1095, 1104, 1115-16 (C.D. Cal. 2003) (mark

19  assigned to defendant after plaintiff filed suit).  According to Plaintiff, the

20

21      [3] The court declines to strike Plaintiff's arguments regarding abandonment.

22  Plaintiff presents these arguments not to have this court reconsider its holding on

23  summary judgment, but rather, to support Plaintiff's argument that its position with
    respect to this issue was reasonable.  However, Plaintiff's post-hoc attempt to bolster its

24  evidence of Mallett's cash sales by including copies of Mallett's check register is

25  disingenuous.  <u>See</u> Gross Decl., Ex. E.  No such evidence was presented to the court on
    summary judgment.

26

27      [4] Defendants point to Mallett's acknowledgment that his mark could not be
    confused with Defendants' as a basis for showing that Plaintiff's suit was frivolous.

28  Mallett, however, was admittedly a layman in matters of trademark law.

1   assignment of Mallett's mark was advantageous because Mallett was purportedly

2   the senior user of the Pelican mark for the goods in question.[5] There is little doubt

3   that acquiring the Mallett mark and gaining incontestability status on the mark

4   gave Plaintiff a tactical benefit in both <u>Pelican I</u> and <u>Pelican II</u> by providing

5   defenses to Defendants' counterclaims and eliminating certain defenses

6   Defendants could raise.  Plaintiff's conduct, however, demonstrates aggressive

7   litigation strategy, not necessarily a suit grounded in bad faith or filed for an

8   improper purpose.  Such strategy – for better or worse – is not exceptional.

9   Moreover, the fact that Plaintiff has yet to use Mallett's mark is insignificant in

10  light of the fact that Defendants demanded Plaintiff not use the mark, claiming the

11  Mallett inventory was evidence that must  be preserved until the litigation

12  concluded.  <u>See</u> Placido Decl. (Summ. J.) ¶¶ 7-10.[6]

13         The cases Defendants rely on involved circumstances not present here and

14  are thus distinguishable.  <u>See</u> <u>Viola Sportswear, Inc. v. Mimun</u>, 574 F. Supp. 619,

15  621 (E.D.N.Y 1983) (meritless complaint containing allegations of a nationwide

16  trademark conspiracy based on sale of a single pair of $10.00 jeans in which "there

17  _____

18         [5] Plaintiff's additional explanation that acquiring the Mallett Registration was
    necessary to avoid a claim of infringement by Mallett is unpersuasive, as Plaintiff waited
19  over a year after discovering the Mallett registration to acquire it and presented no
20  evidence that Mallett was likely to sue.

21         [6] Defendants argue that the complaint was frivolous because it asserted ownership
22  of a mark Plaintiff knew or should have known had been abandoned.  Specifically,
    Defendants argue that no goodwill was assigned with Mallett's trademark and, in
23  response to the argument that Mallett was the senior user, Defendants had common law
24  priority to the Pelican mark.  Neither of these issues was determined by the court on
    summary judgment, and they are not appropriately considered on a motion for attorneys'
25  fees.

26         In their reply brief, Defendants also argue that Plaintiff knew that its trademark
    claims were barred by laches.  Arguments not raised in the moving papers will not be
27  considered for the first time in a reply.  <u>See</u> <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818
28  (9th Cir. 1990); Schwarzer et al., <u>Federal Civil Procedure Before Trial</u>, § 12:107 (2004).

1  [was] not the slightest suggestion in any paper before the Court that *any* inquiry

2  was made to lend some assurance that the allegations in the complaint were well-

3  grounded in fact" and plaintiff did not oppose the granting of defendants' motion

4  for summary judgment); <u>Universal City Studios, Inc. v. Nintendo Co. Ltd.</u>, 615 F.

5  Supp. 838 (S.D.N.Y. 1985) (suit filed in bad faith and for ulterior business motive

6  of extracting license agreements for visual images of King Kong when plaintiff

7  knew that it had no rights to such images and the pre-filing investigation, or lack

8  thereof, was designed to avoid discovery of the complaint's lack of substance);

9  <u>IMAF v. J.C. Penney Co.</u>, 810 F. Supp. 96, 100 (S.D.N.Y. 1992) (suit "utterly lack

10 a solid legal foundation" where mark had not been established in United States

11 and "there was no possible way that IMAF reasonably could have expected to

12 succeed on a Lanham Act claim based on section 43(a)" as well as an "absolute

13 failure to make a sincere attempt validly to establish an essential element of a

14 section 43(a) claim"); <u>Caesars World, Inc. v. Milanian</u>, 247 F. Supp. 1171,

15 1207 (D. Nev. 2003) (suit involved "pattern or practice [] to file bogus intent-to-

16 use applications for marks, and attempt to sell or license the 'rights' in the marks"

17 in order to "hold Plaintiffs hostage"); <u>Pilates, Inc. v. Current Concepts, Inc.</u>, 120 F.

18 Supp. 2d 286, 314 (S.D.N.Y. 2000) (trademark registration declared invalid where

19 there was "absolutely no basis for stating that the equipment mark had been used

20 continuously in commerce" and registrant "consciously avoided making any

21 inquiries that would have resulted in evidence showing a lack of use"); <u>Polo</u>

22 <u>Fashions, Inc. v. Extra Special Products, Inc.</u>, 208 U.S.P.Q. 421 (S.D.N.Y. 1980)

23 (registration was maintained by filing false and fraudulent statements and

24 defendants had stopped using the mark in the registration a generation earlier);

25 <u>Orient Express Trading Co. Ltd. v. Federated Dep't Stores Inc.</u>, 3 U.S.P.Q. 2d

26 1387, 1389 (S.D.N.Y. 1987) (fraudulent trademark registrations "unmistakably

27 obtained" for purpose of initiating vexatious litigation and for pressuring

28 defendants to do business with plaintiffs).

8

1    *C. "Unreasonably and vexatiously multiplied litigation proceedings"*

2        Lastly, Defendants argue that Plaintiff unnecessarily and vexatiously

3    pursued this case by (1) aggressively pursuing and insisting on protective orders

4    that did not comply with local rules, (2) improperly instructing witnesses not to

5    answer relevant deposition questions, (3) causing a joint stipulation to be drafted

6    and later rendered moot when the objections were withdrawn without explanation,

7    (4) refusing to produce Mallett's tax documents on the date they were due absent a

8    motion to compel, as Plaintiff's counsel was now representing Mallett, even

9    though Mallett never claimed that his records were confidential, (5) failing to

10   produce Mallett documents until the day of his deposition, (6) attempting to

11   include allegations related to Pelican I in the Pelican II complaint, (7) falsely

12   representing that Plaintiff's counsel represented Mallett, thereby insulating Mallett

13   from an interview with Defendants' counsel, and (8) forcing Defendants to redact

14   allegedly confidential information from court filings while ignoring its own

15   confidential designations and filing confidential information in unredacted form a

16   year later.

17       Defendants cite nothing out of the ordinary in a case between two litigious

18   parties. See Boney, 127 F.3d at 827 ("[Defendant] has failed to demonstrate that

19   this case is exceptional in any respect other than the degree of animosity among

20   the [parties].")[7] The "Court is not inclined to find a case exceptional based on the

21   simple bumbling about of counsel; although such behavior makes the case more

22

23       ────────────────────────

         [7] Defendants overlook the fact that protective orders were sought by both parties.

24   In fact, the parties submitted stipulated protective orders. To the extent Plaintiff sought to
     include allegations already contained in Pelican I when filing Pelican II, this was

25   remedied when the court granted Defendants' motion to strike. Although Defendants had

26   difficulty obtaining some discovery, they eventually received the information they sought.
     As to the allegation that Plaintiff's counsel early on falsely stated that her firm

27   represented Mallett, it appears to be a result of a misunderstanding. See Mallett Depo.,

28   pp. 87-88 (Stanton Decl.).

1  difficult to all concerned, it does not indicate clearly and convincingly that the
2  action was wholly without merit." See Stutz Motor Car of America, Inc. v.
3  Reebok Int'l, Ltd., 909 F. Supp. 1353, 1368 (C.D. Cal. 1995). The court further
4  declines Defendants' invitation to keep score of the various motions filed by the
5  parties.[8] Neither party was notably more successful in bringing or defeating
6  motions.
7       The court is not unsympathetic to Defendants' complaint. The court found a
8  number of events troubling in this case. The action was filed two months before
9  Pelican I was scheduled to go to trial. Mallett destroyed documents allegedly
10 without Plaintiff's counsel's knowledge shortly after assigning his trademark to
11 Plaintiff, despite being told by counsel that he "would ultimately need to get some
12 documents from him, to get whatever documents he had," see Russ Depo., p. 22.[9]
13 Plaintiff failed to contact sales representatives to corroborate assertions by Mallett,
14 such as unrecorded cash sales after 1999. Plaintiff's counsel's explanation that
15 she cannot discuss why she decided to include information once declared
16 confidential in later filings without revealing attorney- client privilege is
17 questionable. Finally, Plaintiff has been at best cavalier in adhering to court
18 orders, having been found in contempt for violating this court's preliminary
19 injunction order in Pelican I. Despite these troubling aspects, the court cannot
20 find that the instant action was so "malicious, fraudulent, deliberate, willful,
21 groundless, unreasonable, vexatious, or pursued in bad faith" to warrant
22 designating it "exceptional." See Lindy Pen, 982 F.2d at 1410 ("Other than its

23 _____

24      [8] The court also declines to consider the prior actions of Plaintiff's counsel and
25 Defendant Pelican in Pelican Products, Inc. v. Hubbell Lighting, Inc. and Koehler-Bright
   Star, Inc., Case No. CV 00-06985 NM.
26
27      [9] Plaintiff 's counsel's suggestion that he "merely asked what kind of
   documentation Mr. Mallett had" is contradicted by the record. Pl.'s Opp'n, p. 21 n. 20.
28 See Russ Depo., p. 22.

1   longevity, there is nothing exceptional about this case.").

2

3                              **III.  CONCLUSION**

4           For the reasons set forth above, Defendants' motion to have the case

5   deemed exceptional, entitling Defendants to an award of attorneys' fees and costs,

6   is DENIED.[10]

7

8   IT IS SO ORDERED.

9   DATED:  August 20, 2004

10

11

12                                        Nora M. Manella
                                          United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          [10] Defendants' request for attorneys' fees under Fed. R. Civ. P. 11, 28 U.S.C.

28   § 1927, and the court's inherent powers is denied for the same reasons set forth above.